United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Terence O. Huenefeld and Paula Huenefeld, Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 16-62881-Civ-Scola |
| National Beverage Corp., and Nicholas A. Caporella, Defendants. | ) ) ) | |

## Order on Defendants' Motion to Dismiss Amended Complaint

The Plaintiffs bring this lawsuit against National Beverage Corp. ("NBC") and Nicholas Caporella for discrimination, assault and battery, and breach of contract during the course of Plaintiff Terrence Huenefeld's employment with NBC. This matter is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Verified Amended Complaint (ECF No. 62). For the reasons set forth below, the Court **grants in part and denies in part** the motion to dismiss.

### 1. Background

Plaintiff Terrence Huenefeld ("Huenefeld") is licensed as a commercial pilot. (Am. Compl. ¶ 5, ECF No. 59.) Prior to his employment with NBC, Huenefeld piloted jets for several unrelated companies and earned a gross income of approximately $150,000 per year. (*Id.* ¶ 8.) Defendant Nicholas Caporella is the Chairman of the Board and Chief Executive Officer of NBC. (*Id.* ¶ 3.) Caporella is also licensed as a commercial pilot, and owns a corporation that has a part ownership interest in an airplane that Caporella uses for both personal and business travel. (*Id.* ¶¶ 4, 9.)

In January of 2016, NBC interviewed Huenefeld for the position of Second in Command ("SIC") of the plane. (*Id.* ¶ 9.) During the interview, Caporella and Brent Bott, NBC's Executive Director of Consumer Marketing, advised Huenefeld that he would be employed by NBC, and that NBC would pay for the training that Huenefeld needed in order to get his "rating" as SIC of the plane. (*Id.*) Although Huenefeld initially agreed to accept the position, he later had second thoughts. (*Id.* ¶ 10.) Huenefeld then engaged in further discussions with NBC. (*Id.* ¶ 11.) Caporella orally agreed that if Huenefeld resigned from his other positions, NBC would pay him $150,000 for one year, and would provide Huenefeld and his family with the benefits to which all NBC employees were entitled, including health care. (*Id.*) Caporella assured him that no matter what happened, Huenefeld would receive at least one year's salary if the position was ever eliminated. (*Id.* ¶¶ 11-12.) Huenefeld alleges that he

resigned from his other employment in reliance on Caporella's assurances and promises. (*Id.* ¶ 13.)

After Huenefeld began his employment with NBC, Caporella allegedly refused to send him for training to obtain his certification as SIC of the plane. (*Id.* ¶ 22.) Nonetheless, Caporella flew the plane on multiple occasions, both within the United States and internationally, with Huenefeld acting as the SIC. (*Id.* ¶¶ 21, 23, 25.) Huenefeld alleges that NBC knew that Caporella was flying the plane without a properly-licensed SIC. (*Id.* ¶ 23.)

After Huenefeld's first flight with Caporella, Caporella's son informed Huenefeld that Huenefeld was required to send text messages to Caporella after each flight praising Caporella for his skills as a pilot. (*Id.* ¶ 27.) Huenefeld alleges that he was also informed of this requirement by Bott and by Caporella himself. (*Id.* ¶ 28.) During Huenefeld's third flight with Caporella, Caporella verbally abused Huenefeld. (*Id.* ¶ 30.) Caporella continued to verbally abuse Huenefeld thereafter, typically when Huenefeld would discuss Caporella's mistakes with him. (*Id.* ¶ 36.)

The Complaint alleges that "[o]n or about March 11, 2016, in addition to the verbal abuse, [Caporella] commenced what became a repeated pattern of unprovoked and unwanted sexually oriented touching . . . ." (*Id.* ¶ 31.) On these occasions, Caporella would make comments to Huenefeld such as "You are not a man, I am the man," and "There can only be one alpha male." (*Id.* ¶ 33.) Huenefeld complained to Caporella's son, who told Huenefeld that this was normal behavior for Caporella and that Huenefeld needed to allow it if he wanted to continue receiving his salary. (*Id.* ¶ 34.) In addition, both Caporella's son and Bott told Huenefeld that he should not contact NBC's human resources department, that he would be fired if he did, and that they would personally handle his complaints. (*Id.* ¶ 35.)

On or about June 28 or June 29, 2016, Huenefeld retained legal counsel. (*Id.* ¶ 38.) On July 5, 2016, Huenefeld and Caporella piloted a flight to Michigan. (*Id.* ¶ 39.) During the flight, Caporella flew the plane to a dangerous altitude and complained about having flight control issues. (*Id.*) Huenefeld suggested they return to the airport, but Caporella refused. (*Id.*) Later in the flight, Caporella again complained about having flight control issues and Huenefeld asked Caporella if he needed assistance and made suggestions to Caporella during the landing. (*Id.*) In response, Caporella verbally abused Huenefeld. (*Id.*) After the plane landed in Michigan, Caporella yelled at Huenefeld on the tarmac and hit him. (*Id.* ¶ 41.) Huenefeld alleges that he reported the incident to the local police department and went to the hospital for treatment. (*Id.* ¶ 42.)

Huenefeld subsequently contacted Caporella's son about the incident, and was told that he should write an email or text message to Caporella to be

delivered to Caporella by NBC's corporate secretary, in accordance with NBC protocol. (*Id.* ¶ 43.) Huenefeld then spoke with Caporella over the phone. (*Id.* ¶ 44.) Caporella told Huenefeld that in order to keep his job, Huenefeld needed to write a letter stating that "things were all right." (*Id.*) In addition, Caporella told Huenefeld that NBC would be reducing his salary by at least one-third, and that the difference could be considered a non-guaranteed bonus, which would be unilaterally awarded by Caporella. (*Id.*)

On July 7, 2016, Huenefeld wrote an email to Bott, complaining about the mental and verbal abuse from Caporella, the assault and battery in Michigan, and Caporella's illegal operation of international flights when Huenefeld did not possess the required SIC certification. (*Id.* ¶ 47.) Bott revised the email and Huenefeld sent it to NBC's corporate secretary. (*Id.* ¶ 48.) Bott later told Huenefeld that Caporella reacted favorably to the email. (*Id.* ¶ 48.)

On July 11, 2016, Huenefeld's counsel wrote a letter to NBC, formally complaining that Caporella and NBC persisted in flying the plane outside of the United States without the required number of licensed pilots. (*Id.* ¶ 51.) Sometime thereafter, Huenefeld was informed by Bott, Caporella, and Caporella's son that NBC would retain Huenefeld as SIC at a reduced salary, and that he would be required to sign a document prepared by NBC's counsel. (*Id.* ¶ 52.) The document was styled as an "offer," and contained a full release of NBC and Caporella for all claims contained in the July 11, 2016 letter "'as a condition of continued employment (at will) with benefits with the Company.'" (*Id.* ¶ 53.) In addition, the document required that Huenefeld keep his claims of assault and battery confidential. (*Id.*) In response, Huenefeld informed NBC that he would continue his employment only if NBC hired a captain for the plane to replace Caporella. (*Id.* ¶ 55.)

On July 29, 2016, Huenefeld attended a meeting at NBC's offices in Fort Lauderdale, Florida at which NBC's President and legal counsel were present. (*Id.* ¶ 56.) Caporella attended the meeting by phone, and denied that anything had happened in Michigan. (*Id.*) Huenefeld was again asked to sign the "offer." (*Id.* ¶ 57.) When Huenefeld refused, his employment was terminated. (*Id.*) Huenefeld alleges that he subsequently learned from the health insurance provider that his insurance had been terminated on July 25, 2016, four days prior to the meeting at which he was terminated. (*Id.* ¶ 59.)

On December 7, 2016, Huenefeld and his wife filed this suit seeking compensatory and punitive damages. On June 15, 2017, the Court granted in part and denied in part the Defendants' motion to dismiss the complaint (ECF No. 57). The Court dismissed without prejudice Counts One and Two of the Complaint, and dismissed with prejudice Count Three as to Defendant Caporella and Count Seven as to Defendant Caporella. The Court gave the

Plaintiffs leave to amend Counts One and Two of the Complaint. On June 21, 2017, the Plaintiffs filed the amended complaint.

## 2. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## 3. Analysis

The Defendants have moved to dismiss Counts One and Two of the amended complaint. Count One asserts a cause of action under Title VII of the Civil Right Act of 1994, 42 U.S.C. § 2000e, alleging that Huenefeld was harassed and discriminated against on the basis of his sex during the course of his employment at NBC. Count Two asserts a cause of action under the Florida Civil Rights Act, Florida Statute § 760.10 ("FCRA"), based on the same allegations as Count One. The Defendants argue that Count Two must be dismissed because the Plaintiffs have failed to exhaust their administrative remedies as required by the FCRA, and argue that Count One must be dismissed because the Plaintiffs have failed to state a claim under Title VII. The Court will address each count in turn.

## A. Exhaustion of Administrative Remedies Under the FCRA

In order to bring a suit for discrimination under the FCRA or Title VII, a plaintiff must first exhaust the available administrative remedies, which means that the plaintiff must timely file a complaint with the appropriate commission. *Gonzalez v. Wells Fargo Bank, N.A.*, No. 12-80937, 2013 WL 5435789, at *5 (S.D. Fla. Sept. 27, 2013) (Marra, J.). In an action brought under the FCRA, the plaintiff must first file a complaint with the Florida Commission on Human Relations ("FCHR"). *Sheridan v. State of Fla. Dep't of Health*, 182 So.3d 787, 789 (Fla. 1st Dist. Ct. App. 2016) (citations omitted). In an action brought under Title VII, the plaintiff must first file a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-5e(1)). The FCHR and the EEOC have a worksharing arrangement pursuant to which each agency has authorized the other to accept discrimination charges or complaints on the other's behalf. *Sheridan*, 182 So.3d at 789-90.

Under the FCRA, once a complaint is filed the FCHR has 180 days to investigate and "determine if reasonable cause exists to believe that a discriminatory practice has occurred." *Sheridan*, 182 So.3d at 790 (citing Fla. Stat. § 760.11(3)). If reasonable cause exists, then the claimant can either file a civil suit in a court of competent jurisdiction, or request an administrative hearing. *Id.* (citing Fla. Stat. § 760.11(4)). If no reasonable cause exists, then the claim is dismissed and the claimant may request an administrative hearing. *Id.* (citing Fla. Stat. § 760.11(7)). If the FHCR is unable to determine whether reasonable cause exists within 180 days of the date the complaint was filed, then the claimant may proceed as if the FHCR had determined that there was reasonable cause. *Id.* (citing Fla. Stat. § 760.11(8)). Florida courts have held that if the EEOC does "not pass on the validity of the discrimination charge by making either a cause or a no-cause determination," then a right-to-sue notice from the EEOC "cannot operate to circumvent the administrative prerequisites of the FCRA." *Sheridan*, 182 So.3d at 793.

The amended complaint alleges that Huenefeld complied with all conditions precedent of Title VII by filing a charge of discrimination with the EEOC, and that he was issued a Notice of Right to Sue on September 30, 2016. (Am. Compl. ¶ 62.) However, the Amended Complaint does not include any allegations concerning Huenefeld's compliance with the FCRA's exhaustion requirement, nor does it indicate the basis for the EEOC's notice of right to sue. In response to the motion to dismiss, the Plaintiffs assert that Huenefeld dual-filed his complaint with the EEOC and the FHCR, and that where a complaint is timely filed with the EEOC, the FHCR does not investigate at all. (Resp. at 6-7.) The Plaintiffs have not provided any citations to support their argument that the FHCR does not investigate when a complaint is dual-filed

with the EEOC. Moreover, since the amended complaint does not actually allege that the EEOC complaint was dual-filed or that Huenefeld complied with the conditions precedent of the FCRA, the Court is unable to consider such allegations. Accordingly, the Court dismisses Count Two without prejudice. *See Martinez v. Abraham Chevrolet-Tampa*, 891 So.2d 579, 581 (Fla. 2d. Dist. Ct. App. 2004) (holding that completion of the administrative complaint process is a condition precedent to a discrimination lawsuit under the FCRA).

## B. Failure to State a Claim Under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case for a hostile work environment based on sexual harassment under Title VII, Huenefeld must demonstrate that: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of the employment; and (5) there is a basis for holding the employer liable for the harassment. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304-05 (11th Cir. 2016) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). The Court previously dismissed the Plaintiffs' Title VII claim without prejudice, holding that the factual allegations in the first complaint were insufficient to permit the Court to draw a reasonable inference that Huenefeld was subject to discrimination *because of* his sex. (Order at 6, ECF No. 57.) The Defendants now move to dismiss the Plaintiffs' amended Title VII claim, arguing that Huenefeld does not allege that he is a member of a protected class, that he has still insufficiently alleged that he was harassed because of his sex, and that there is no evidence that the harassment was sufficiently severe or pervasive as to alter the terms and conditions of employment.

With respect to the first element, Title VII's prohibition of discrimination based on sex protects men as well as women. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 692 (1983)). The Supreme Court has held that "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Id.* at 79. In addition, the Eleventh Circuit has recognized that sexual harassment includes not just unwelcome sexual advances, but also "a threatening, bellicose, demeaning, hostile or offensive conduct by a supervisor in the workplace because of the sex

of the victim of such conduct." *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497 (11th Cir. 1985). Therefore, the allegations in the Complaint are sufficient to establish that Huenefeld is a member of a protected group.

With respect to the third element, Huenefeld must show that, but for his sex, he would not have been subject to sexual harassment. *Furcron*, 843 F.3d at 1305 (internal quotations and citations omitted); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (citations omitted). The Supreme Court has explained that,

> [H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination based on sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* . . . because of . . . sex."

*Oncale*, 523 U.S. at 80-81 (emphasis in original). The Court further explained that "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80 (internal quotations and citations omitted). Accordingly, the Eleventh Circuit has held that if "a supervisor makes sexual overtures to workers of both sexes or . . . the conduct complained of is equally offensive to male and female workers," the sexual harassment is not based upon sex. *Henson*, 682 F.2d at 904; *see also Smith v. Pefanis*, 652 F.Supp.2d 1308, 1324 (N.D. Ga. 2009) (citations omitted); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811 (11th Cir. 2010) (holding that sexual harassment was based on sex where a "substantial portion of the words and conduct . . . may reasonably be read as gender-specific" but noting that it would be a different case if the facts portrayed "a generally vulgar workplace whose indiscriminate insults and sexually-laden conversation did not focus on the gender of the victim . . . .").

The amended complaint alleges that Caporella repeatedly grabbed, rubbed, and groped Huenefeld's leg in a sexual manner. The amended complaint also alleges that during these incidents, Caporella made comments to Huenfeld such as "[j]ust because you have a pair of balls doesn't mean

you're the man, I am the man," and "[t]here can only be one alpha male," among others. (Am. Compl. ¶ 33.) The alleged comments are gender-specific and are sufficient to support a reasonable inference that Huenefeld was "harassed in such sex-specific and derogatory terms . . . as to make it clear" that Caporella was "motivated by general hostility" to the presence of other men in the cockpit. *See Oncale*, 523 U.S. at 80.

The Defendants also argue that the alleged conduct was insufficiently pervasive or severe to state a claim under Title VII. The Eleventh Circuit has held that,

> Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component. The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable.

*Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999) (internal quotations and citations omitted). Harassing conduct need not be both severe and pervasive; rather, establishing that harassing conduct was either severe or pervasive is sufficient to establish a violation of Title VII. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998)).

The Defendants argue that the Plaintiffs have failed to meet the objective component of the test. In analyzing the objective component, courts should consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). The conduct must be considered in context, and courts must look at the totality of the circumstances. *Id.* (citations omitted). The Eleventh Circuit has noted that the analysis of whether harassing conduct is sufficiently severe or pervasive is fact intensive. *Id.*

The amended complaint alleges that the sexual touching occurred on eighteen separate occasions during the four-month period of March 11, 2016 and July 11, 2016. (Am. Compl. ¶ 32.) The amended complaint alleges that on each of these dates, Caporella made comments similar to those described above, which could reasonably be interpreted as intending to degrade and demean Huenefeld because he was male. (*Id.* ¶ 33.) When combined with the allegation that Huenefeld was required to send Caporella complimentary text messages after each flight, a jury could reasonably find that this behavior was

sufficiently frequent, severe, and humiliating so as to change the conditions of Huenefeld's employment and create an abusive working environment. *See Mendoza*, 195 F.3d at 1246 (citations omitted). At this stage in the case, the Plaintiffs have alleged sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678 (citations omitted).

The Defendants argue that the alleged conduct fails "to meet the high threshold of proof in the Eleventh Circuit," and cites numerous cases in support of this proposition. (Mot. at 14-17.) However, all but one of the cases cited by the Defendants were decided at the summary judgment stage, and none of the cases involved both the type of physical touching that the Plaintiffs allege *and* the frequency that they allege. To the contrary, the frequency and severity of the touching at issue in this case is similar to *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000), in which the Eleventh Circuit held that fifteen instances of harassment over the course of four months was not infrequent. The court noted that the defendant's harassing conduct included giving the plaintiff unwanted massages, standing so close to the plaintiff that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts. *Id.* Thus, in addition to being frequent, the court found that the conduct was sufficiently severe, physically threatening, and humiliating that it constituted sexual harassment under Title VII. *Id.*; *see also Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding that defendant's harassing conduct that occurred 18 times over two-and-a-half weeks and consisted of following the plaintiff into the restroom and attempting to touch her breasts, place his hands down her pants, and pull off her pants, was sufficiently severe and pervasive).

### 4. Conclusion

Accordingly, the Court **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 62**). The Court dismisses without prejudice Count Two of the Amended Complaint, but denies the Defendants' motion to dismiss Count One. If the Plaintiffs are able to correct the deficiencies in Count Two, they may file an amended complaint on or before **October 31, 2017**.

**Done and ordered** in chambers, at Miami, Florida, on October 24, 2017.

Robert N. Scola, Jr.
United States District Judge